IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



MARC DORN, individually and on behalf all others similarly situated,

Plaintiff,

v.

EDDINGTON SECURITY, INC.; BOVIS LEND LEASE LMB, INC.; and MARK EDDINGTON,

Defendants.

No. 08 Civ. 10271 (LTS)

### [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTIONS FOR CERTIFICATION OF SETTLEMENT CLASSES, FINAL APPROVAL OF CLASS ACTION SETTLEMENTS, AND APPROVAL OF FLSA SETTLEMENTS, APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD

Plaintiff is a former security guard who worked for Eddington Security, Inc., Mark Eddington (together with Eddington Security, Inc., the "Eddington Defendants"); and Bovis Lend Lease LMB, Inc. ("Bovis") (together with the Eddington Defendants, "Defendants"). On November 25, 2008, Plaintiff Marc Dorn ("Dorn") commenced this action as a putative class action under Federal Rule of Civil Procedure 23 ("Rule 23") and collective action under 29 U.S.C. § 216(b) ("§ 216(b)") seeking unpaid overtime wages, spread of hours pay, other fees and costs deducted from wages or not compensated by Defendants, attorneys' fees and costs, interest, liquidated damages, and injunctive and declaratory relief.

Dorn alleged that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to pay him and other security guards overtime wages and spread of hours pay, failing to reimburse them for uniform costs and license fees, and making unlawful deductions from their wages.

On January 26, 2009, Plaintiff filed an amended complaint substituting Bovis for Bovis Lend Lease, Inc., which had been named as a defendant in the original complaint. On February 25, 2009, Bovis filed its Answer and Cross-Claims against Eddington Security, in which it disputed the material allegations in the amended complaint and denied any liability in the action. On March 3, 2009, the Eddington Defendants filed their Answer, Affirmative Defenses, and Responses to Cross-Claims, in which they disputed the material allegations in the amended complaint and denied any liability in the action.

After substantial informal discovery and negotiations, the parties reached settlements totaling $1 million. (Decl. of Justin M. Swartz in Support of Plf.'s Mot. for Certification of Settlement Classes, Final Approval of Class Action Settlements, and Approval of FLSA Settlements ("Swartz Decl.") ¶¶ 10-13, 15, 17.) On January 20, 2011, this Court entered an Order preliminarily approving the settlements and authorizing notice (Swartz Decl. Ex. C ("Notice")) to all Class Members. (Swartz Decl. Ex. B ("Preliminary Approval Order").)

On February 2, 2011, Rust Consulting, Inc., a third-party claims administrator, sent the Notice to all Class Members informing them of their right to opt out of or object to the settlements and of Class Counsel's intention to seek a service award of $10,000 for the named plaintiff, 33.3% of the settlement fund for Class Counsel's attorneys' fees, and up to $20,000 for their out-of-pocket expenses.

One Class Member filed a timely objection to the terms of the settlements. Five Class Members requested exclusion.

On May 31, 2011, Plaintiffs filed their Motion for Certification of Settlement Classes, Final Approval of Class Action Settlements, and Approval of FLSA Settlements ("Motion for Final Approval"). The same day, Plaintiffs also filed their Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and their Motion for Class

Representative Service Award ("Motion for Service Award"). Defendants did not oppose these motions.

The Court held a fairness hearing on June 14, 2011. Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, the Motion for Service Award, the supporting declarations, the objection of one Class Member, the arguments presented at the June 14, 2011 fairness hearing, and the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

<u>Approval of the Settlement Agreements</u>

1. The Court hereby grants the Motion for Final Approval and approves the settlements as set forth in the Settlement Agreements and this Order under Federal Rule of Civil Procedure 23.

2. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine whether a settlement is substantively fair, Courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

3. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties

3

who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

4. "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted). The Court gives weight to the parties' judgment that the settlements are fair and reasonable. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, No. 08 Civ. 8531, No. 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

***Procedural Fairness***

5. The settlements are procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)). Here, the settlements were reached after Class Counsel had conducted a thorough investigation and evaluated the claims, had sought Court intervention with mediation-related discovery, and after extensive negotiations between the parties. Class Counsel engaged in aggressive efforts to obtain pay and time records that would enable him to perform accurate damages calculations and sought court intervention to obtain those records. Class Counsel was able to extrapolate to perform damages calculations based on the records Defendants were able to provide. Class Counsel interviewed Plaintiff and more than fifteen other opt-ins and obtained and reviewed hundreds of pages of documents from Plaintiff and the opt-ins. From these sources, Class Counsel was able to evaluate the strengths

4

and weaknesses of Plaintiff's claims.

6. To help resolve the case, the parties enlisted the services of experienced employment mediator Ruth Raisfeld. (Swartz Decl. ¶ 18.) Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlements they achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Torres*, 2010 WL 5507892, at *4; *Diaz*, 2010 WL 5507912, at *4.

### *Substantive Fairness*

7. The settlements are substantively fair. All of the factors set forth in *City of Detroit.*, 495 F.2d at 463 which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

8. The "*Grinnell* factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

9. Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

10. The Class's reaction to the settlements was positive. The Notice included an explanation of the allocation formula and an estimate of each class member's award. The Notice also informed class members that they could object to or exclude themselves from the settlements, and explained how to do so. (Swartz Decl. ¶¶ 41.)

5

11. Only one of the 1,396 Class Members submitted a timely objection to the settlements, and only five have requested exclusion. This favorable response recommends final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion).

12. The Court finds that the timely objection is without merit and is therefore overruled. Therefore, the second *Grinnell* factor weighs in favor of final approval.

13. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres*, 2010 WL 5507892, at *5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). Here, over the course of two years, Plaintiff obtained substantial informal discovery, including both documentary evidence, declaration testimony, and data on Class Members' damages. (Swartz Decl. ¶¶ 11-13, 15, 17.) The third *Grinnell* factor weighs in favor of final approval.

14. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, the fact-intensive nature of Plaintiff's claims and Defendants' affirmative defenses presents risk. The settlements eliminate this uncertainty. The fourth *Grinnell* factor weighs in favor of final approval.

15. The risk of obtaining and maintaining class status throughout trial also weighs in favor of final approval. A motion to decertify the class would likely require extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. The fifth *Grinnell* factor weighs in favor of final approval.

16. The risk of collection weighs in favor of final approval. The settlements eliminated the risk of collection, as Defendants have already deposited the fund into an escrow account. Accordingly, the sixth *Grinnell* factor favors final approval.

17. The substantial amount of the settlements weighs strongly in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The seventh *Grinnell* factor favors final approval.

**Approval of FLSA Settlements**

18. The Court hereby approves the FLSA settlements.

19. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *Torres*, 2010 WL 5507892, at *6; *Clark*, 2010 WL 1948198, at *7.

20. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Clark*, 2010 WL 1948198, at *7; *Lynn's Food Stores*,

*Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Torres*, 2010 WL 5507892, at *6 (quoting *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *6 (Aug. 23, 2010)). If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Lynn's Food Stores*, 697 F.3d at 1354; *Clark*, 2010 WL 1948198, at *7.

21. The Court finds that the FLSA settlements were the result of contested litigation and arm's length negotiation.

**Dissemination of Notice**

22. Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each identified class member at his or her last known address (with re-mailing of returned Notices). (Swartz Decl., Ex. D (Decl. of Caryn Donly ("Donly Decl.")) ¶¶ 7-10.) This Court finds that the Notice fairly and adequately advised Class Members of the terms of the settlements, as well as the right of Class Members to opt out of the class, to object to the settlements, and to appear at the fairness hearing conducted on June 14, 2011. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

**Award of Fees and Costs to Class Counsel and Award of Service Award to Named Plaintiff**

23. On January 20, 2011, the Court appointed Outten & Golden LLP and The Ottinger Firm, P.C. as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g).

24. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

8

25. Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law. *See, e.g., Diaz*, 2010 WL 5507912, at *6 (O&G "are experienced class action employment lawyers and have extensive experience prosecuting and settling wage and hour class actions."); *Clark*, 2010 WL 1948198, at *8 (same); *see also deMunecas*, 2010 WL 3322580, at *7 ("Class Counsel, Outten & Golden LLP, are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settlement many employment law class actions, including wage and hour class actions.").

26. The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

27. The Court hereby grants Plaintiff's Motion for Attorneys' Fees and awards Class Counsel $333,000 in attorneys' fees or 33.3% of the fund (including any interest in the fund).

28. The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Diaz*, 2010 WL 5507912, at *7-8 (following percentage-of-the-fund method); *deMunecas*, 2010 WL 3322580, at * 8-9 (same); *Clark*, 2010 WL 1948198, at *8-9 (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

29. In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See Frank*, 228 F.R.D. at 189. Where relatively small claims can only be

9

prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL. *See Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979) (discussing remedial purpose of FLSA); *Ramos v. Marksue Realty Corp.*, 586 F. Supp. 488, 492 (S.D.N.Y. 1984) (discussing remedial purpose of NYLL); *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 994 (N.Y. 2008) (discussing remedial purpose of NYLL).

30. Class Counsel's request for 33.3% of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *Diaz*, 2010 WL 5507912, at *7 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *see also deMunecas*, 2010 WL 3322580, at *8 (granting class counsel 33% of settlement fund in wage and hour class action); *Clark*, 2010 WL 1948198, at *8-9 (awarding class counsel one-third of settlement fund in wage and hour class action); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL case); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global Tech. Co.* No. 00 Civ. 8495, 186 F. Supp.

2d 358, 370 (awarding 33 1/3% fee on fund valued at $11.5 million); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund).

31. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of 33.3% is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 493 F.3d 110, 111-12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008). While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a 33.3% recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success. *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

32. All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of 33.3% of the fund.

33. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

34. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $17,320, which the Court deems to be reasonable. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

35. The attorneys' fees awarded and the amount in reimbursement of litigation costs

11

and expenses shall be paid from the settlement fund.

36.     The Court finds reasonable a service award of $10,000 to Marc Dorn. This amount shall be paid from the settlement fund.

37.     Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See Torres*, 2010 WL 5507892, at *8 (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Clark*, 2010 WL 1948198, at *9 (granting service awards of $10,000 to each of 7 named plaintiffs); *see also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

**Conclusion**

38.     The "Effective Date" of the settlements shall be 31 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlements shall be the day after all appeals are finally resolved.

39.     Within 5 days of the Effective Date, the Claims Administrator will distribute the money in the settlement account by making the following payments in the order below:

        A.     Paying Class Counsel fees of $333,000;

        B.     Reimbursing Class Counsel costs in the amount of $17,320, which the Court finds to be reasonable;

        C.     Paying the settlement administrator's fees;

12

      D.     Paying a service award of $10,000 to Marc Dorn;

      E.     Paying the remainder of the money in the settlement account to Class Members in accordance with the allocation plan described in the Settlement Agreements.

40.    The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreements. The parties shall abide by all terms of the Settlement Agreements and this Order.

*[Handwritten: This order resolves docket entries 77, 80 and 82. The Clerk of Court is requested to close this case.]*

It is so ORDERED this **21** day of **September**, 2011.

 

*[Signature]*

Honorable Laura Taylor Swain
United States District Judge

*[Handwritten note: This order resolves DEs 77, 80, & 82]*

13